UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MONIR IZADKHAH,<br><br>           Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>           Defendant. | Case No.: 5:12-CV-05250-EJD<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Re: Docket Item Nos. 33, 36]** |

## I.     Introduction

Ms. Monir Izadkhah ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to appeal Ms. Carolyn W. Colvin, Acting Commissioner of Social Security's ("Defendant") final decision denying her claim for Disability Insurance Benefits ("Disability Benefits") and Supplemental Security Income ("Supplemental Income").  Pl.'s Mot. for Summ. J., Docket Item No. 33.  Plaintiff seeks an order reversing Defendant's final decision, or alternatively, remanding the case to the Social Security Administration for further proceedings.  Id.  Presently before the Court are the parties' cross-motions for summary judgment.  Having fully reviewed the parties' briefings and for the following reasons below, the Court DENIES Plaintiff's Motion for Summary Judgment (Dkt. No. 33) and GRANTS Defendant's Motion for Summary Judgment (Docket Item No. 36).

1

## II. Background

### a. Factual Background

Plaintiff was born on January 30, 1961. R., 115. In 1991, Plaintiff immigrated to the United States from Iran. R. at 402. Plaintiff speaks English and has completed high school education. R. at 402. From 1995 to 2001, Plaintiff worked as an electronics assembler and inspector for Raychem Corporation and Tyco Electronics Corporation in Menlo Park. R. at 54, 134–35, 147. As an electronics assembler and inspector, Plaintiff was mostly required to be in a sitting position; she did not lift or carry objects weighing over ten pounds. R. at 187. From 2002 to October 14, 2004, Plaintiff worked as a cafeteria helper at the Stanford Hospital cafeteria in Palo Alto. R. at 147. In this job, Plaintiff worked and cooked on the service line and often carried cases of beverages weighing from forty to sixty pounds. R. at 53, 188. Because Plaintiff stood and walked for long periods in this job, she developed pain in her feet, hip and buttocks on April 2, 2004. R. at 162. On April 14, 2004, Plaintiff slipped and fell on the wet floor at work, injuring her back and right hip. R. at 162. Plaintiff's last day of any type of work was October 18, 2004. R. at 52, 139. Since her fall, Plaintiff has seen a number of physicians in respect to her feet and back injuries, as discussed below.

### b. Procedural Background

On December 6, 2006, Plaintiff filed an application for Disability Benefits under Title II of the Social Security Act. R. at 76. The Social Security Administration first denied the claim on April 26, 2007, then denied the claim upon reconsideration on January 30, 2008. R. at 76. On June 24, 2008, Plaintiff requested a hearing on the Social Security Administration's decision; her request was denied as untimely on August 5, 2008. R. at 76–77. On October 16, 2008, the Social Security Administration's Appeals Council denied Plaintiff's request for review. R. at 79.

In January 2009, Plaintiff filed a new Title II application for Disability Benefits, alleging that she was disabled as of August 2, 2005. R. at 115–16. Four months later, Plaintiff filed an application for Supplemental Income under Title XVI of the Social Security Act, alleging disability

2

Case No.: 5:12-CV-05250-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

from the date of October 17, 2008. R. at 122–24. The Social Security Administration denied both claims on June 26, 2009 and on January 26, 2010, upon reconsideration. R. at 85–86, 95–96.

On March 24, 2010, Plaintiff requested a hearing on the Social Security Administration's denial of both applications. R. at 101. The hearing was held before Administrative Law Judge Brenton L. Rogozen ("ALJ") on February 28, 2011. R. at 10. On April 8, 2011, the ALJ determined Plaintiff was not disabled under the Social Security Act from October 17, 2008 to April 8, 2011. R. at 10. Plaintiff requested review of the ALJ's decision; the Social Security Administration's Appeals Council denied the request on August 10, 2012. R. at 1. This appeal followed.

### III. Legal Standard

#### a. Standard of Review for ALJ's Decision

Pursuant to 42 U.S.C. §405(g), the Court has authority to review the ALJ's decision. However, the Court's jurisdiction is limited to determining whether the ALJ applied the proper legal standard and whether substantial evidence in the record as a whole supports the decision. 42 U.S.C. § 405(g); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). The Ninth Circuit has held that substantial evidence is evidence that is "more than a scintilla but less than a preponderance." Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). If the evidence supports more than one rational interpretation, this Court must uphold the ALJ's conclusion. Burch v. Barnhart, 400 F.3d 676, 680–81 (9th Cir. 2005); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). Harmless errors by the ALJ will not be reversed. Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991).

#### b. Standard of Review for Disability Determination

Under the Social Security Act, a claimant of disability benefits must establish a prima facie case that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

3

§423(d)(1)(A). The impairment must be so severe that the claimant not only may be unable to perform her previous work, "but cannot, considering her age, education, and work experience engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A).

The Ninth Circuit has implemented a five-step test to evaluate disability claims. Burch, 400 F.3d at 679; 20 C.F.R. §§ 404.1520, 416.920. If the ALJ determines at any point in the process that the claimant is disabled or is not, the ALJ is entitled to make a finding and promptly end the review. Matney, 981 F.2d at 1019 (citations omitted). In the first step, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is presently engaged, the claimant is not disabled; otherwise the ALJ proceeds to step two. In step two, the ALJ considers whether the claimant suffered a severe impairment (i.e., impairments that significantly affect her ability to function). 20 C.F.R. §§ 404.1520(c), 416.920(c). If claimant does not possess such impairments, she is not disabled and her disability claim is denied; otherwise the ALJ proceeds to step three. In step three, the ALJ asks whether claimant's condition meets or equals the requirements of the Listing of Impairments ("the Listing"). 20 C.F.R. §§ 404.1520(d), 416.920(d). If claimant's impairments meet the requirements of the Listing, the claimant is disabled; otherwise the ALJ proceeds to step four. Before engaging step four, the ALJ shall determine the claimant's residual functional capacities ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC refers to what the claimant "can still do despite existing exertional and nonexertional limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). In step four, the ALJ asks whether the claimant can still perform work that she has done in the past. 20 C.F.R. §§ 404.1520(f), 416.920(f). In this step, if the claimant shows that she cannot do so, she meets the burden of establishing a prima facie case of disability, and the burden shifts to the Commissioner to show in the fifth step that claimant is not disabled. Tackett v. Apfel, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the final step, the ALJ considers the claimant's age, education, and vocational background, and determines whether the claimant can perform some substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). In making this

4

Case No.: 5:12-CV-05250-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

determination, the ALJ may rely on testimony by a vocational expert or reference the Medical Vocational Guidelines. Gallant v. Heckler, 753 F.2d 1450, 1456–57 (9th Cir. 1984).

### IV. Discussion

Plaintiff alleges the ALJ (1) did not provide Plaintiff with a full and fair hearing; (2) did not rely on substantial evidence in determining Plaintiff's non-disability; (3) did not provide legitimate and specific reasons in disregarding the opinions of treating physicians Dr. Mednick and Dr. Nchekwube; and (4) failed to provide clear and convincing reasons in determining Plaintiff's testimony was not credible.

#### a. Duty to Provide a Full and Fair Hearing

Plaintiff alleges the ALJ did not conduct a full and fair hearing on Plaintiff's claims because the ALJ did not develop the Record at the hearing, nor did he include an off-record discussion in the Record during which the ALJ allegedly requested that Plaintiff waive her claim to earlier benefits in exchange for receipt of benefits starting from January 30, 2011. Pl.'s Mot. for Summ. J. at 10, Dkt. No. 33.

##### i. Duty to Develop the Record

In a social security case, the ALJ has an "independent duty to fully and fairly develop the record to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)); 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. §§ 404.1512(d)–(e). However, this duty is only triggered when ambiguous evidence exists or if "[the ALJ determines] the record is inadequate to allow for proper evaluation of the evidence . . . ." Tonapetyan, 242 F.3d at 1150 (citations omitted). To satisfy this duty, the ALJ may subpoena or submit questions to the claimant's physicians, continue the hearing, or keep the record open post-hearing to allow supplementation. Id. Courts in the Ninth Circuit have held that an ALJ violates the duty to develop the record if (1) the record lacks critical information regarding the claimant's application of disability benefits, (2) the record does not include third-party function reports, i.e., reports by a lay witness with personal knowledge of the claimant's condition, (3) the record does not include a daily activities questionnaire by the claimant, (4) the

5

Case No.: 5:12-CV-05250-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALJ does not inquire into the claimant's ability to lift, carry, sit, stand, walk; the claimant's daily activities; and her medication during the hearing, and (5) the claimant potentially suffers mental impairment. See, e.g., Hadera v. Colvin, No. 12-CV-5315-EMC, 2013 WL 4510662, at *3–4 (N.D. Cal. Aug. 22, 2013); Villegas v. Astrue, No. 10-CV-0132-AJW, 2010 WL 4537825, at *3–4 (C.D. Cal. Nov. 1, 2010); Levy v. Astrue, No. 07-CV-6412-JWJ, 2009 WL 2163512, at *5–6 (C.D. Cal. July 19, 2009).

Plaintiff argues that the ALJ failed to develop the record because the hearing was short in length, because the ALJ did not inquire into Plaintiff's well-documented limitations in both walking and the effect of her medications during the hearing, and because the ALJ did not consider the existence of electronics assembly or inspection jobs in the national economy. Pl.'s Mot. for Summ. J. at 11–12, Dkt. No. 33.

There is no specific requirement as to the length of a disability benefits hearing. Villegas, 2010 WL 4537825, at *5. Even though the ALJ did not inquire into Plaintiff's limitations in walking and the effect of her medications at the hearing, the Record already contained a significant amount of information on this issue, including Plaintiff's disability reports, Plaintiff's and third-party statements regarding her impairments, treatment and consultative examination reports, State agency reviewing physician assessments, and medical-vocational analyses. Def.'s Mot. for Summ. J. at 4, Dkt. No. 36. Plaintiff has acknowledged that "these limitations [regarding Plaintiff's ability to walk and her medications] are well-documented in the [R]ecord." Pl.'s Mot. for Summ. J. 11:11, 11:27, Dkt. No. 33. Thus, this case is distinguishable from those like Villegas, in which the ALJ was determined to have violated the duty to further develop the record. 2010 WL 4537825, at *4. Villegas is unlike the case at issue because, in that case, the ALJ failed to inquire into plaintiff's limitations and medications even though the record did not contain medical reports to shed light on such limitations, effectively disallowing the ALJ to make an informed decision based on substantial evidence. Id. Here, the ALJ did not deprive Plaintiff of a full and fair hearing because no substantial ambiguity existed in the Record which would have rendered it impossible for the ALJ to properly evaluate the evidence and reach a conclusion.

In addition, the ALJ was not required to address the number of available jobs in the national economy because this inquiry is conducted in step five and the ALJ had already determined in step four that Plaintiff could perform her past relevant work as an electronics assembler and inspector, based on substantial evidence, effectively ending further inquiries of the five-step test. Here, the evidence was not ambiguous nor did the ALJ find it inadequate to reach such a conclusion. R. at 19; 20 C.F.R. §§ 404.1520(g), 416.920(g); Burch, 400 F.3d at 680–81 (holding that under the standard of substantial evidence, the court must uphold the ALJ's decision if the evidence supports more than one rational interpretation). Accordingly, the court concludes that the ALJ did not violate the duty to develop the record.

### ii. Off-Record Agreement

Plaintiff alleges the ALJ did not conduct a full and fair hearing because the ALJ allegedly made an off-record promise on February 28, 2011 to find Plaintiff disabled as of January 30, 2011, in exchange for Plaintiff's decision to waive claims dating back to the disability date of August 2, 2005. Pl.'s Mot. for Summ. J. at 12–13, Dkt. No. 33. To support the argument that this off-record offer should be considered binding, Plaintiff cites only one out-of-circuit case: Betancourt v. Astrue, 824 F. Supp. 2d 211, 215–17 (D. Mass. 2011). Pl.'s Mot. for Summ. J. at 12, Dkt. No. 33. Betancourt, however, unpersuasive.[1] Because the alleged discussion was not reflected in the Record, the Court is unable to consider the alleged discussion in reviewing the ALJ's disability analysis. See 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."); 20 C.F.R. § 404.1520b (providing general methods to evaluating evidence).

Even if the off-record discussion occurred, Defendant asserts that Plaintiff was not prejudiced by waiving the disability onset date of August 2005 because Plaintiff was not entitled to

---

[1] While the plaintiff in Betancourt put forth a similar argument—that the ALJ violated the plaintiff's right to due process because the ALJ's off-record discussion with plaintiff's counsel was not included in the record—Betancourt differs from the case at issue because the hearing transcript in Betancourt included a reference to the off-record discussion multiple times, thus confirming its occurrence and providing the reviewing court a basis to find that there was a violation of due process. Here, neither the Hearing Transcript nor the Record mention the alleged off-record discussion. Indeed, the sole indication that his discussion even occurred comes from two short, identical statements provided by Plaintiff's daughter and former counsel. R. at 228–31. The Court finds Betancourt distinguishable on that ground.

7

Case No.: 5:12-CV-05250-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

claim that disability date in any event. Def.'s Mot. for Summ. J. 6, Docket Item No. 36. Prior to the instant Title II and Title XVI applications filed in 2009, Plaintiff filed a Title II application in December 2006, alleging a disability date of August 2005; the Social Security Administration denied the application first in 2007, then in 2008 upon reconsideration. R. at 76. In August 5, 2008, Plaintiff's request for a hearing on the Social Security Administration's decision was rejected as untimely, and the Social Security Administration's Appeals Council subsequently denied Plaintiff's request for review in October 2008. R. at 76, 77, 79. Because Plaintiff did not request judicial review on the Appeals Council's decision regarding her 2006 application, the Council's decision was final for that application. 20 C.F.R. § 404.900(a)(5) (providing that the Appeals Council's review is considered a final decision and that the claimant may request judicial review by filing in a federal district court). Accordingly, Plaintiff was not prejudiced by waiving the alleged onset date of August 2005 because she was not entitled to allege it as an onset disability date in this action. The Court finds that the ALJ did not deny Plaintiff a full and fair hearing.

**b. Finding of Disability**

Plaintiff alleges the ALJ's finding of non-disability was not supported by substantial evidence. Pl.'s Mot. for Summ. J. at 14, Dkt. No. 33. Specifically, Plaintiff alleges that in conducting the five-step test, the ALJ's decision that Plaintiff had RFC to perform sedentary work was not supported by substantial evidence. Id. at 15; see 20 C.F.R. § 404.1567(a) (providing that sedentary work involves lifting no more than ten pounds and occasionally carrying articles like docket files and small tools; and involves occasional sitting and a certain amount of walking and standing).

As previously noted, the court must uphold the ALJ's decision if the evidence supports more than one rational interpretation. Burch, 400 F.3d at 680–81. In determining Plaintiff had RFC to perform sedentary work, the ALJ considered multiple opinions from physicians. R. at 17–18. The ALJ relied on the opinion of Dr. Ronald Wolfson, Plaintiff's workers' compensation physician, who opined in November 2006 that Plaintiff had constant light to moderate back pain but was capable of light work. R. at 16–17, 271–72. The ALJ also noted that during a physical

8
Case No.: 5:12-CV-05250-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

examination with Dr. L. Neena Madireddi in February 2007, Plaintiff said it was "better for her to walk" and could walk for one and a half hour and stand for forty minutes. R. at 16–17, 234. The ALJ noted that during Plaintiff's examination with Dr. Madireddi, Plaintiff could move independently with transfer on and off the examination table, had normal station and gait, full muscle strength and normal muscle tone, full range of motion in the extremities, normal reflexes and intact sensation. R. at 16, 235. The ALJ thus relied on the opinion of Dr. Madireddi that Plaintiff was capable of light exertional work, could lift and carry twenty pounds occasionally and ten pounds frequently; could stand and walk for up to four hours cumulatively and sit for a total of six hours. R. at 16–17.

The ALJ also considered the opinion of Dr. David Mednick, who opined in February 2008 that while Plaintiff could not work in her previous job as a cafeteria worker, Plaintiff could perform "semi-sedentary work." R. at 16, 512. The ALJ also took note that despite Dr. Emeka Nchekwube's report that Plaintiff's condition worsened in 2009, as Plaintiff exhibited slow gait with a cane, hesitancy, and mild weakness, the same report showed that Plaintiff had normal muscle tone and bulk with no sensory deficits. R. 17–18, 394. Finally, the ALJ relied on Dr. Lara Salamacha's report in 2009 that Plaintiff could stand, walk and sit for thirty minutes at a time and was independent in performing household chores. R. 16, 397. During Plaintiff's examination with Dr. Salamacha, Plaintiff walked without a cane, had normal gait, intact lower extremity strength, intact sensation and normal reflexes. R. 16–17, 397–98. Dr. Salamacha thus opined that Plaintiff could stand and walk for a total of four hours in a workday and was unrestricted in sitting and could lift and carry twenty pounds occasionally and ten pounds frequently and perform occasional postural activities. R. at 399.

Upon review, the Court finds that the ALJ relied on substantial evidence in determining Plaintiff was capable of performing her past relevant work as an electronics assembler or inspector.

### c. Decision to Discount the Treating Physicians' Opinions

Plaintiff alleges the ALJ did not provide legitimate and specific reasons in discounting the opinions of treating physicians Dr. Mednick and Dr. Nchekwube. Pl.'s Mot. for Summ. J. at 19,

9

Case No.: 5:12-CV-05250-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dkt. No. 33. In evaluating disability claims, the ALJ generally assigns more weight to a treating or examining physician's opinion. 20 C.F.R. §§ 416.927(c)(1)–(c)(2). When a treating physician's opinion does not contradict that of another physician, the ALJ may reject the opinion only for "clear and convincing reasons." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion does contradict another physician, the ALJ may discount or reject the treating physician's opinion in favor of the conflicting opinions only by providing specific and legitimate reasons based on substantial evidence. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citations omitted); Bayliss, 427 F.3d at 1216 (citing Lester, 81 F.3d at 830). The ALJ may inquire whether the treating physician's assessment merely rehashed the claimant's own statements, or was largely based on the claimant's self-reports that have been discounted as incredible. Tommasetti, 533 F.3d at 1041. The ALJ may also reject or discount a treating physician's opinion if the opinion was not based on objective medical evidence, inconsistent with the physician's own medical records, or dramatically more restrictive than the opinion of any other medical source. Id.

### i. Dr. Mednick's Opinions of Plaintiff's Foot Injuries

On April 19, 2004, five days after Plaintiff's workplace injury, Plaintiff was referred to Kaiser Permanente San Jose, where podiatrist Dr. Christina Rude diagnosed Plaintiff with plantar faciitis in both feet. R. at 334–35. Dr. Rude gave Plaintiff injections and prescribed elevated shoes. R. at 335. In May 2004, Plaintiff reported to Dr. Rude that the injections and shoes did not alleviate her heel pain. R. at 327. In July 2004, Dr. Rude referred Plaintiff to Dr. Ronald Parsons; Dr. Parsons confirmed Plaintiff had plantar faciitis in both feet and recommended Plaintiff continue treatment with Dr. Rude. R. at 321–22. Dr. Parsons also noted that Plaintiff reported the pain in her right heel was "much better" but refused to receive injections. R. at 321–22.

On August 19, 2004, four months after Plaintiff's workplace injury, Plaintiff saw podiatrist and private practitioner Dr. Mednick. R. at 319. Dr. Mednick diagnosed Plaintiff with plantar faciitis and recommended extra corporeal shock wave therapy ("shock wave therapy"). R. at 319. In October 2004 and December 2004, Dr. Rude performed surgeries respectively on Plaintiff's left and right foot. R. at 265, 369, 373–74. Two weeks after Plaintiff's surgery in her left foot, Dr.

10

Case No.: 5:12-CV-05250-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Rude reported Plaintiff was "doing well" and had no swelling in her left heel. R. at 343. In January 2005, Dr. Rude noted Plaintiff had no swelling in her right heel post-surgery but felt pain after walking for thirty minutes. R. at 296. Because Plaintiff still reported heel pain, Kaiser Occupational Health referred Plaintiff to Dr. Mednick again on May 9, 2005. R. at 268, 284.

Dr. Mednick continued to recommend shock wave therapy during Plaintiff's visits in May, August, and October of 2005. R. at 282–84. During her two visits with Dr. Mednick on March 29, 2006 and April 14, 2006, Plaintiff rated her heel pain as "8 out of 10 with 10 being the worst." R. at 280–81. In March 2008, Dr. Mednick completed a Primary Treating Physician's Permanent and Stationary Report, stating that Plaintiff could stand or walk for less than two hours, could sit less than eight hours in a day, and could occasionally lift twenty-one pounds. R. at 243. Dr. Mednick also opined that Plaintiff was unable to return to her usual occupation. R. at 244. Afterwards, Plaintiff continued to visit Dr. Mednick from 2007 to 2010. R. at 499–530.

Under Tommasetti, the ALJ may discount a treating physician's opinion if the opinion was not based on objective medical evidence, or dramatically more restrictive than the opinion of any other medical source. 533 F.3d at 1041. The ALJ gave "some weight" to Dr. Mednick's opinion in 2008 that Plaintiff could perform "semi-sedentary" work, consistent with the opinions of consultative examiners that Plaintiff could perform at least sedentary work. R. at 18; see 20 C.F.R. § 404.1567(a) ("[S]edentary work involves listing no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; and involves sitting and a certain amount of walking and standing, usually occasionally, in carrying out job duties."). But in discounting Dr. Mednick's opinion, the ALJ explained that "the opinions of the consultative examiners of the State agency were better explained, adequately addressed the claimant's subjective complaints, and were more consistent with the [R]ecord as a whole." R. at 18. A review of Dr. Mednick's treatment notes from May 2007 to November 2010 reveal that most notes are extremely concise and merely rehash Plaintiff's subjective reports of pain. R. at 499–530. The objective findings of Dr. Mednick from 2007 to 2010 are also sparse and concise, as almost all treatment notes merely conclude that Plaintiff has "[p]ain with palpation to the plantar

fascia." R. at 500–24.  The ALJ also noted while Plaintiff complained of pain, Dr. Madireddi and Dr. Salamacha opined respectively in 2007 and 2009 that Plaintiff had normal gait, full muscle strength, normal reflexes, and intact sensation.  R. at 16–18, 235, 308, 391–94, 397–98.  The ALJ also noted that Dr. Madireddi and Dr. Salamacha opined that Plaintiff was capable of performing light exertional work.  R. at 16–17, 397–98.  Accordingly, in discounting Dr. Mednick's opinion in favor of the opinions of Dr. Madireddi and Dr. Salamacha, the ALJ provided specific and legitimate reasons based on substantial evidence.

### ii. Dr. Nchekwube's Opinions of Plaintiff's Back Injuries

Aside from her foot injuries, Plaintiff also sought treatment for a back injury incurred as a result of an industrial incident on April 14, 2004.  In July 2004, Plaintiff saw Dr. Stacy Shoemaker at Kaiser Permanente, reporting pain in her right hip.  R. at 324.  Dr. Shoemaker concluded Plaintiff had "persistent right ischial tuberosity pain" and noted Plaintiff could stand for less than ten minutes.  R. at 325.  Plaintiff saw Dr. Fauzia Basit at Kaiser Permanente in August 2004 and was diagnosed with a sprain in her right hip and lower back.  R. at 366, 370, 375–79.  Dr. Basit performed an MRI on Plaintiff's back in December 2004 and found several injuries to Plaintiff's discs.  R. at 358–59, 366, 370.  Dr. Basit referred Plaintiff to Dr. Nchekwube for further treatment.  R. at 361.

On March 21, 2005, Dr. Nchekwube performed a neurosurgical consultation and noted Plaintiff experienced tenderness over the mid to lower lumbar region with moderate paralumbar muscle spasm and had two symptomatic, noncontinuous pathologic processes in the lumbar spine at L1-2 and L3-4.  R. at 304–06.  An x-ray of Plaintiff's spine showed grade I spondylolisthesis at L3 and L4 with moderate instability.  R. at 269.  Dr. Nchekwube performed back surgery on Plaintiff on August 2, 2005.  R. at 196, 269, 305.  In November 2005, Dr. Nchekwube reported Plaintiff had "improved significantly" post-surgery and looked happy.  R. at 298.  Dr. Nchekwube then saw Plaintiff approximately every two months.  R. at 285, 297–99.  In July 2006, Dr. Nchekwube reported Plaintiff's complaints of numbness in her buttocks and a mild pain in the back but observed no objective sensory deficit and no motor deficit; Dr. Nchekwube opined Plaintiff

12

could sit for forty-five minutes and stand for two hours. R. at 285. Plaintiff alleges that in July 2007, Dr. Nchekwube performed an x-ray of her back and found that she had an open disc. R. at 61. Plaintiff alleges declining Dr. Nchekwube's recommendation of a second back surgery because the first surgery did not improve her condition. R. at 61.

In August 2008, a Physical Capabilities Report by Dr. Nchekwube stated Plaintiff could only sit and stand for one hour and could not walk for long periods, and could not lift any weight and frequently experienced severe pain—enough to interfere with the attention required for simple work tasks. R. at 161. When Plaintiff visited Dr. Nchekwube in March, April, July and August of 2009, Plaintiff complained that her pain was worsening. R. at 391–94. During Plaintiff's July 2009 visit, Dr. Nchekwube reported Plaintiff had difficulty with activities of daily living. R. at 392. Because Plaintiff declined back surgery once more in her July and August visits in 2009, Dr. Nchekwube declared that Plaintiff had reached maximum medical improvement and found Plaintiff "permanent and stationary." R. at 391–92.

In rejecting the opinions of Dr. Nchekwube, the ALJ noted although Dr. Nchekwube allegedly saw Plaintiff monthly or every three months from 2005 to 2011, the Record did not contain treatment reports from 2007 to 2008. R. at 18, 472, 477. Upon review, the Record contained only Dr. Nchekwube's treatment notes from 2005, 2006 and 2009. R. at 285, 297–98, 391–94. The Record revealed that after receiving back surgery in November 2005, Plaintiff "improved significantly" and looked happy. R. at 298. However, from July 2006 to July 2007, Plaintiff's condition allegedly deteriorated from a "mild pain" to an "open disc [in her back]." R. at 61, 285. The ALJ notes that "there is no recent MRI or CT scan, or any substantial evidence to account for the claimant's worsening [from July 2006 to July 2007] to the point that she could perform <u>no lifting, no repetitive bending, pushing or pulling</u>, as recommended by Dr. Nchekwube." R. at 18 (emphasis in original). Accordingly, under <u>Tommasetti</u>, the ALJ properly found Dr. Nchekwube's alleged frequency of checkups with Plaintiff to be inconsistent with his own medical records.

13

Case No.: 5:12-CV-05250-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The ALJ also properly found that Dr. Nchekwube's opinions were inconsistent with four other physicians. R. at 18–19. In February 2010, Dr. Nchekwube opined Plaintiff could not perform sedentary work, and could only sit and stand or walk for five minutes a day and could "never" lift anything. R. at 18, 472–75. A year later, Dr. Nchekwube opined Plaintiff could sit and stand or walk for less than two hours a day and could "never" lift anything. R. at 18, 476, 477–81. The ALJ found that four other physicians had determined otherwise: Dr. Wolfson found Plaintiff could perform light work (R. at 18–19, 272); Dr. Mednick found Plaintiff could occasionally lift up to twenty-one pounds, stand and walk for under two hours, and sit for less than eight hours a day (R. at 18–19, 517); Dr. Madifreddi found Plaintiff could lift at least twenty pounds occasionally and stand and walk from two to four hours and sit for a total of six hours a day (R. at 18–19, 236); and Dr. Salamacha found Plaintiff could lift and carry at least twenty pounds occasionally and stand and walk for a total of at least four hours in a day and had no restrictions in sitting (R. at 18–19, 399). Accordingly, the record supports the ALJ's decision to reject Dr. Nchekwube's opinions in favor of Dr. Wolfson, Dr. Mednick, Dr. Madifreddi, and Dr. Salamacha.

### d. Decision to Discount the Plaintiff's Opinions

A claimant will not be considered disabled based solely on subjective complaints of pain. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991). The claimant must produce objective medical evidence to show that her alleged impairments could be reasonably expected to produce some of the alleged symptoms. Benton, 331 F.3d at 1040. Once the claimant does so, the ALJ may only reject the claimant's testimony by finding evidence of malingering, or by expressing clear and convincing reasons. Id. In evaluating the claimant's credibility, an ALJ may consider factors such as ordinary techniques of credibility evaluation, including Plaintiff's reputation for truthfulness; inconsistencies in the Plaintiff's own testimony; inconsistencies between the Plaintiff's testimony and medical testimony; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities. Tommasetti, 533 F.3d at 1039–40; Tonapetyan, 242 F.3d at 1148; Morgan v. Comm'r, 169 F.3d 595, 599–600 (9th Cir. 1999).

14

Case No.: 5:12-CV-05250-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In discounting Plaintiff's subjective testimony, the ALJ proffered a number of reasons. R. at 14–17. The ALJ first found Plaintiff's testimony to be unsupported or inconsistent with medical testimony. R. at 15. While a lack of supporting medical evidence cannot be a sole basis in discounting a claimant, "it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681. The ALJ considered Plaintiff's subjective complaints of her heel and back injuries and found that the Record supported the allegations "to some degree." R. at 15. However, the ALJ noted that Plaintiff's complaints of heel pain post-surgery were inconsistent with medical testimony. R. at 15. After receiving foot surgery, Dr. Rude reported in 2005 that Plaintiff was "doing well" with no swelling in both heels, and could walk for thirty minutes. R. at 296, 343. In 2006, Dr. Nchekwube reported that Plaintiff could walk for up to forty-five minutes and "had no leg pain whatsoever." R. at 297.

In addition to Plaintiff's complaints of heel pain, the ALJ examined Plaintiff's complaints of back pain. The ALJ found that while Plaintiff complained of lower back pain in 2005, there was no evidence of lumbosacral radiculopathy based on electromyography and nerve conduction studies performed at the time. R. at 15, 17, 308. Further, although Plaintiff complained of pain post-surgery, an x-ray revealed only post-surgical changes and mild degenerative changes. R. at 15, 268, 293. The ALJ noted that a post-surgery checkup in 2005 reported that Plaintiff had "improved significantly" and looked happy. R. at 15, 298. Another checkup with Dr. Nchekwube in 2006 reported that Plaintiff "looked much better" and could walk for forty-five minutes. R. at 297.

Finally, the ALJ also found that Plaintiff was able to perform daily activities, despite her testimony of disabling symptoms. When weighing a claimant's credibility, the ALJ may consider the claimant's daily activities as a factor. Tommasetti, 533 F.3d at 1039; Thomas v. Barnhart, 278 F.3d 947, 958–59 (holding the ALJ's finding that claimant was able to perform various household chores despite subjective claims of inability was one reason to discredit her testimony). The ALJ found that Plaintiff reported taking daily walks and was independent in performing household chores, dressing, bathing, and caring for herself (R. at 17, 177, 397); and Plaintiff's son reported

15

that Plaintiff could check her email, chat with family on the phone, go on fifteen-minute walks, read and watch TV (R. at 17, 168). In assessing Plaintiff's credibility, the ALJ properly considered Plaintiff's inconsistent testimony of disabling symptoms with her ability to perform daily activities. For the foregoing reasons, absent a finding of malingering, the ALJ provided a clear and convincing explanation in discounting Plaintiff's credibility.

### V.  Conclusion

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment. The clerk shall CLOSE the file upon entry of judgment.

**IT IS SO ORDERED**

Dated: August 26, 2014



EDWARD J. DAVILA
United States District Judge

16
Case No.: 5:12-CV-05250-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT